NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAULA BALZER, : | |
| : | Civil Action No. 03-5541 (JAP) |
| Plaintiff, : | |
| : | OPINION |
| v. : | |
| : | |
| SHAW PITTMAN LLP and CHRISTINE : | |
| KEARNS, : | |
| : | |
| Defendants. : | |

APPEARANCES

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Steven I. Adler, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800

   Attorneys for the Plaintiff

GREENBAUM, ROWE, SMITH & DAVIS LLP
John D. North, Esq.
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095

   Attorneys for the Defendants

PISANO, District Judge.

This is a legal malpractice action scheduled for a trial on October 11, 2005. Both parties have filed motions in limine. Plaintiff Paula Balzer ("Balzer") moves to bar the defense's claim that her conduct was an intervening cause of any damages suffered as a result of alleged professional negligence. Defendants Shaw Pittman LLP ("Shaw Pittman") and Christine Kearns, Esq. ("Kearns") move as follows: (1) for a finding that New York law shall apply under choice of law principles so as to bar recovery of an attorney's fee award assuming Balzer succeeds at trial; (2) to preclude any evidence of a mediator's out-of-court statements relevant to this matter; (3) to request a jury instruction on intervening causes in legal malpractice cases; and (4) to omit from the jury charge an instruction on the common knowledge exception to the requirement that expert testimony establishes the standard of care in a case of this nature. The Court heard oral argument on these motions on September 27, 2005 and ruled on all issues except the choice-of-law question.[1] For the reasons explained below, the Court determines that New York law shall govern Balzer's legal malpractice case and grants Defendants' motion.

**Facts Relevant to the Choice-of-Law Issue[2]**

In late 2000, Balzer, then employed as an executive at SFX Entertainment ("SFX") in New York, retained Christine Kearns, Esq., of the Shaw Pittman Law Firm to represent her in

---

[1] The Court's Order accompanying this Opinion memorializes the Court's oral rulings regarding all of Defendants' motions. (Ct.'s Order 9/06/05.) The Court writes now to resolve solely the choice-of-law dispute in this case.

[2] Given the limited scope of this Opinion, the Court finds it unnecessary to provide a more detailed factual discussion here, particularly because it writes only for the benefits of the parties. The Final Pretrial Order with its attached exhibits provides a comprehensive recitation of the facts in this case.

2

renegotiating an employment contract with SFX after Clear Channel Communications ("Clear Channel"), a New York corporation, acquired it. A New Jersey resident, Balzer executed a retainer agreement with Shaw Pittman in her home state. Shaw Pittman does not have a New Jersey office, but has offices in New York and Washington, D.C.. Kearns is an attorney in the firm's Washington, D.C. office.

All of the direct negotiations with Clear Channel took place in New York. The parties here vigorously contest the actual events that transpired during the course of negotiations between Summer 2000 and May 2001. For purposes of this Opinion, suffice it to say that those negotiations resulted in the pending litigation, which raises principally these issues: (1) whether Kearns acted negligently in negotiating and securing for Balzer her severance entitlement upon termination before January 1, 2003; and (2) if Kearns was negligent, did her conduct proximately cause Balzer's damages when she was fired, or did Balzer engage in uncounseled conduct that caused her damages?

Balzer was terminated from her employment on July 11, 2002. Because she claimed that she was fired without cause and discriminated against based on her sex, she filed an arbitration claim against Clear Channel, as the successor to SFX, in New York. Arbitration began, but was suspended soon after so that the parties could discuss settlement. Their negotiations were successful, and Balzer recovered $850,000 for her claims.

According to Balzer, the mediation prompted her to probe Kearns's actions and to ultimately file this lawsuit. Balzer alleges that the mediator who conducted the negotiations opined that she might have recovered more damages for breach of contract if the severance provision in her employment agreement had been more specific and that she might have a

3

malpractice suit against her attorney. Based on the mediator's statements, Balzer filed this now-removed action in the Superior Court of New Jersey, Law Division, seeking an additional $1.83 million in damages based on Defendants' alleged negligence with respect to the renegotiation of her employment contract and, more specifically, her severance rights upon termination.

**Legal Discussion**

On this motion in limine, the parties challenge the appropriate state law to govern Balzer's claims. The Court's decision impacts the issue of fee-shifting in legal malpractice actions. New York prohibits fee-shifting in such cases based on the American Rule. *See, e.g., Baker v. Dorfman*, 239 F.3d 415, 426 (2d Cir. 2000) (citation omitted). Though New Jersey follows generally the same rule, it has carved out exceptions to the American Rule and thus allows fee-shifting in certain cases including legal malpractice suits. *See, e.g., RTC Mortgage Trust 1994 N-1 v. Fidelity Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503, 548 n.16 (D.N.J. 1999) (citation omitted).[3]

Balzer argues that the Court should apply New Jersey law because she is a New Jersey resident, she executed the retainer agreement in New Jersey, and she suffered resulting harm from the alleged malpractice in this State. Defendants, on the other hand, contend that New York law applies because Balzer worked there, Clear Channel resides there, and Balzer's employment agreement, which contains a New York choice-of-law provision, was negotiated and executed there.

As an initial step in determining which law governs, this Court must apply this State's

[3] According to Defendants, the Court must determine whether New Jersey, New York, or Washington, D.C. law governs this action. Neither party, however, contends that Washington, D.C. law applies here. Thus, the Court's inquiry focuses only on the conflict between New Jersey and New York law.

choice of law rules.[4] *See Echols v. Pelullo*, 377 F.2d 272, 275 (3d Cir. 2004) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)) (noting that a court "exercising diversity jurisdiction [,] must apply the choice of law rules of the forum state.")  New Jersey employs a governmental-interest test requiring a court to elect "the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996) (citations omitted).  This is a two-prong standard.  First, a court must make "an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis." *Gantes*, 679 A.2d at 109 (citation omitted).  Second, it need "determine the interest that each state has in resolving the specific issue in dispute" based on the governmental policies underlying each state's law and the effect of each state's litigation-related contacts on those policies." *Id.* (citation omitted).  "If the state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986) (citations omitted).

      The first prong of the test is met, and the parties do not contest this.  *See supra* **Legal Discussion** at 4.  The conflict in law requires the Court, as a second step, to consider the interest that each state has in resolving the fee-shifting issue. *See Gantes*, 679 A.2d at 109.  New York's rule barring fee-shifting is based upon "the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs." *A.G. Ship Maint. Corp. v. Lezak*, 69 N.Y.2d 1, 5 (1986).  Though its general rule is no different, New Jersey recognizes exceptions where an attorney has committed malpractice, misconduct, or a breach of fiduciary duties.  *See, e.g., In re Vayda*, 875 A.2d 925, 928-29 (N.J. 2005) (citations omitted); *see*

---

[4] No party disputes the application of New Jersey law.

*also Grubbs v. Knoll*, 870 A.2d 713, 729 (N.J. Super. Ct. App. Div. 2005) (reciting the American Rule and explaining the development of the Rule's exceptions in this jurisdiction).  For example, New Jersey allows a malpractice plaintiff to recover fees and expenses incurred in such an action because they are "'consequential damages that are proximately related to the malpractice.'" *In re Vayda*, 875 A.2d at 928 (quoting *Saffer v. Willoughby*, 143 N.J. 256, 272 (1996)).  This is so because the American Rule "'does not preclude an allowance of reasonable counsel fees where the incurring thereof is  a traditional element of damages in a particular cause of action.'" *In re Estate of Lash*, 776 A.2d 765, 771 (N.J. 2001) (quotation omitted).  This exception thus ensures that a client will be placed in the same position as if the malpractice had not been committed.  *Grubbs*, 870 A.2d 730 (citations and quotations omitted), and strives to "make the plaintiff whole," *id.* at 731 (citations omitted).

   After considering the varying approaches and the purposes underlying them, the Court concludes that New York law should govern Balzer's malpractice claim because New York possesses the greater interest here in checking the conduct of its licensed attorneys who practice law in the State.  Kearns is not a New Jersey attorney, and Shaw Pittman does not have offices here. Knowing that neither Kearns nor Shaw Pittman is connected with New Jersey, Balzer purposely retained these Defendants to perform legal services related to her New York employment.  All material services rendered as well as the alleged malpractice are predicated upon a binding contract between two New York parties, Balzer as a New York employee and Shaw Pittman as a New York law firm.  Indeed, they agreed that New York law would govern any dispute arising from their service contract.  The fact that Balzer is a New Jersey resident does not support a finding that New Jersey has the greater interest here in litigating the malpractice dispute

6

between the parties.

      Additionally, Defendants cite, among other cases, *Foulke v. Dugan*, 187 F. Supp. 2d 253 (E.D. Pa. 2002) as support for their position.  There, the court applied Pennsylvania law to New Jersey residents' legal malpractice action against Pennsylvania attorneys.  *Id.* at 257-58.  In so deciding, the court considered significant that Pennsylvania was the situs of the injury itself, of the conduct underlying the injury, and of the relationship between the parties. *Id.* (citing 1 Restatement (Second) Conflict of Laws § 145 at 414).  Persuaded by the same considerations, this Court holds that New York law shall govern the parties' dispute and shall resolve the fee-shifting issue under New York law, assuming Balzer is successful on the merits.

    **Conclusion**

      For the reasons explained above, the Court grants Defendants' motion in limine and applies New York law to Balzer's legal malpractice claim.


Dated: October 6, 2005                            S/ JOEL A. PISANO, U.S.D.J.